[No. F010417. Fifth Dist. Apr. 13, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY HERNANDEZ RODRIGUEZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through VII.

### Counsel

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, and Joan A. Markoff, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DIBIASO, J.**—In the published portion of this opinion we will hold that Penal Code section 667.7 applies to persons who served prior prison terms for convictions based upon their liability as aiders and abettors. For the reasons expressed in the unpublished segments of this opinion, we will remand for partial resentencing.

Defendant Danny Hernandez Rodriguez was convicted by a jury of attempted murder (Pen. Code,[1] §§ 664/187, count I), assault with a deadly weapon (§ 245, subd. (a)(1), count II) , and attempted burglary of a vehicle (§§ 664/459, count III). With respect to count I, the jury found to be true the special allegation that defendant personally inflicted great bodily injury upon the victim within the meaning of section 12022.7, and the special allegation that defendant personally used a deadly and dangerous weapon within the meaning of section 12022, subdivision (b). In a bifurcated proceeding, the court, sitting without a jury, found to be true the special allegation attached to count I that defendant served two prior separate prison terms within the meaning of section 667.7.

Defendant was sentenced on count I to life in prison without parole eligibility for 20 years plus a consecutive 1-year enhancement under section 12022, subdivision (b).

The findings of the court and jury on the special allegations attached to counts II and III, and the sentences imposed for those counts, are not material to the published issue.

### FACTS

The victim, Brigando Hernandez Rangel (Rangel), had been drinking with friends from 11 a.m. until 1 or 2 the following morning. He consumed approximately 12 to 13 beers during that time.

When Rangel arrived home at his apartment complex he walked towards the carport area, looking for friends. As he approached the carport, Rangel noticed defendant bent over near a car, with his back to Rangel. The area was darkened. Thinking defendant was a friend, Rangel greeted him. However, Rangel then realized defendant was breaking into a car. Somehow, defendant turned, got behind Rangel, and stabbed him with a knife. Rangel

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

pushed defendant away and moved towards the apartments. Defendant pursued Rangel out of the dark carport into a well-lighted area. When defendant was a foot to 18 inches away from Rangel, Rangel turned around, pushed defendant again, and got a good "face-to-face" look at him in the light. Rangel recognized defendant as being his girlfriend's cousin whom he had previously met at his girlfriend's house. Defendant continued to stab Rangel in the back. Ultimately, Rangel managed to stagger to a friend's apartment, where he collapsed on the kitchen table.

Rangel was stabbed 17 times. His attacker used two knives, as evidenced by two different sized holes in Rangel's shirt and jacket.

When defendant was arrested, one month after the incident, two knives were found under the driver's seat of the truck defendant was driving. The knives fit the holes in Rangel's clothing. Rangel picked defendant out of a photo lineup prepared by the police as a part of their investigation.

## Discussion

I. *The prosecution was not required by section 667.7 to prove defendant personally committed the violations underlying his prior prison terms.*

Having found defendant was a habitual offender pursuant to section 667.7, subdivision (a)(1),[2] the trial court in part sentenced him on count I to

---

[2] Section 667.7 states in pertinent part: "(a) Any person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.7, or personally used force which was likely to produce great bodily injury, who has served two or more prior separate prison terms as defined in Section 667.5 for the crime of murder; attempted murder; voluntary manslaughter; mayhem; rape by force, violence, or fear of immediate and unlawful bodily injury on the victim or another person; oral copulation by force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person; sodomy by force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person; lewd acts on a child under the age of 14 years by use of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person; a violation of subdivision (a) of Section 289 where the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person; kidnapping for ransom, extortion, or robbery; robbery involving the use of force or a deadly weapon; assault with intent to commit murder; assault with a deadly weapon; assault with a force likely to produce great bodily injury; assault with intent to commit rape, sodomy, oral copulation, penetration of a vaginal or anal opening in violation of Section 289, or lewd and lascivious acts on a child; arson of a structure; escape or attempted escape by an inmate with force or violence in violation of subdivision (a) of Section 4530, or of Section 4532; exploding a device with intent to murder in violation of Section 12308; exploding a destructive device which causes bodily injury in violation of Section 12309, or mayhem or great bodily injury in violation of Section 12310; exploding a

life imprisonment, with parole ineligibility for 20 years. ▮ On appeal, defendant contends section 667.7, subdivision (a), required the prosecution to prove he "personally" committed the offenses underlying his prior prison terms, i.e., voluntary manslaughter, robbery involving the use of force or a deadly weapon, and assault with a deadly weapon. He maintains the statute does not apply to persons who served prior prison terms for convictions based on their liability as aiders and abettors (§ 31). It is undisputed the prosecution did not introduce any evidence that defendant personally committed the crimes which resulted in his previous incarcerations.

The pertinent portion of section 667.7, subdivision (a), reads: "Any person convicted of a felony in which the person inflicted great bodily injury . . . or personally used force . . . likely to produce great bodily injury, who has served two or more prior separate prison terms . . . for the crime of . . . voluntary manslaughter; . . . robbery involving the use of force or a deadly weapon; . . . [or] assault with a deadly weapon; . . . is a habitual offender . . . ." For the reasons which follow, we conclude the Legislature did not intend the statute to apply only to defendants who "personally" commit the crimes for which they served prison terms.

▮ When statutory language is clear and unambiguous, " 'there is no need for construction, and courts should not indulge in it.' " (*People* v. *Cole* (1982) 31 Cal.3d 568, 572 [183 Cal.Rptr. 350, 645 P.2d 1182]; see also *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) The words used in a statute must be accorded their commonly accepted meaning as understood by persons of ordinary intelligence. (*People* v. *Medina* (1988) 206 Cal.App.3d 986, 991 [254 Cal.Rptr. 89].)

▮ The crucial phrase "who has served two or more prior separate prison terms . . . *for* [the specified crimes]" (§ 667.7, subd. (a), italics added) is to our mind perfectly straightforward and comprehensible. Webster's Third New International Dictionary (1986) page 886 defines "for" to mean "because of" (usage 8a). Thus, we may read the provision in question

---

destructive device with intent to injure, intimidate, or terrify, in violation of Section 12303.3; any felony in which the person inflicted great bodily injury as provided in Section 12022.7; or any felony punishable by death or life imprisonment with or without the possibility of parole is a habitual offender and shall be punished as follows:

"(1) A person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, or the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046, whichever is greatest. The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section, but the person shall not otherwise be released on parole prior to that time."

as: "who has served two or more prior separate prison terms . . . [*because of* the specified crimes]." Nothing in these words remotely suggests the defendant had to "personally" engage in the conduct constituting the crimes for which prior prison terms were served.

The content of section 667.7 and related statutes demonstrates the Legislature knows quite well how to limit the application of an enhancement provision to the actor and not the abettor. In section 667.7 itself, the words "person" and "personally" appear. They declare the statute will come into play only if the defendant was the one who inflicted, or used force likely to produce, great bodily injury in connection with the commission of the crime for which he or she is on trial. Similarly, other enhancement laws, such as sections 12022, subdivision (b), 12022.5 and 12022.7, contain the word "personally." The inclusion of "personally" in an enhancement statute expressly reflects the legislators' desire that direct rather than derivative culpability be a precondition to increasing a sentence. (See discussion in *People v. Cole, supra*, 31 Cal.3d at pp. 573-574, and *People v. Reed* (1982) 135 Cal.App.3d 149, 152 [185 Cal.Rptr. 169].)

Defendant insists the use of "person" and "personally" in one part of section 667.7, subdivision (a), requires the other parts to be construed as if they included those terms. We come to the opposite conclusion. The Legislature's election not to use accepted words of legal art in the portion of section 667.7 before us is an unequivocal signal the prior convictions need not have resulted from the defendant's directly culpable conduct. ■ We see our interpretation as consistent with the general rule that "if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act." (*People v. Walker* (1976) 18 Cal.3d 232, 241-242 [133 Cal.Rptr. 520, 555 P.2d 306].)

■ A construction of section 667.7, subdivision (a), in the manner proposed by defendant would in effect insert additional words into the subject clause, so that it read, "who has served two or more prior separate prison terms . . . for [*personally committing*] the crime of . . . ." We are unwilling to engage in this sort of judicial legislation in the face of what seems to us to be an utterly clear expression of legislative will. ■ "The judicial function is that of interpretation; it does not include the power of amendment under the guise of interpretation." (*West Coast Hotel Co.* v. *Parrish* (1937) 300 U.S. 379, 404 [81 L.Ed. 703, 715, 57 S.Ct. 578, 108 A.L.R. 1330].)

■ In support of his proposed construction, defendant has included in his brief considerable discussion of the legislative history of section 667.7.

According to defendant, the record establishes that the legislation was never "aimed at" individuals who were derivatively liable for their prior offenses. He says the object of the statute is instead to increase the penalties for those who repeatedly and personally commit dangerous offenses. Other than the obvious goal of protecting society from chronic criminals, we find nothing of help in the legislative history on the issue we face here. Thus, "this is a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute." (*Greenwood* v. *United States* (1956) 350 U.S. 366, 374 [100 L.Ed. 412, 419, 76 S.Ct. 410].)

Even if the legislative background disclosed an intent to require personal liability for the prior crimes, the legislators failed to carry out this purpose by the words a majority of them chose to use in their final product. We may not ignore the plain and obvious meaning of the statute in order to correct the Legislature's "aim." (Cf. *San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 862-863 [191 Cal.Rptr. 800, 663 P.2d 523].) Our decision will, however, give it the opportunity to improve on its marksmanship if necessary.

Finally, we do not believe we are in violation of the *Walker* rule of construction that an absence of explicit language one way or the other in an enhancement statute presents an ambiguity which warrants a narrow construction in favor of the defendant. (See *People* v. *Piper* (1986) 42 Cal.3d 471, 477, fn. 5 [229 Cal.Rptr. 125, 722 P.2d 899].) We do not see it as applicable. The wording we construe is descriptive of an individual's status as a repeat offender, not of his or her conduct. (See *In re Foss* (1974) 10 Cal.3d 910, 922 [112 Cal.Rptr. 649, 519 P.2d 1073].) Were the terms involved descriptive of conduct rather than status, perhaps we would be inclined to apply the *Walker* principles. However, in this instance, the plain meaning of the statutory language is apparent; there is no ambiguity. (*People* v. *Cole, supra,* 31 Cal.3d at p. 572.) Rules of construction exist to resolve doubts, not create them.

We know of nothing to prohibit the Legislature from requiring the enhancement of a sentence when the convicted person has served a prior prison term for an offense for which he or she was derivatively or vicariously responsible. If one has shown a propensity to assist or encourage others to perpetrate serious felonies, such that he or she is deemed to be equally as culpable as the actor (§ 31), the Legislature has every right to determine the person should suffer additional punishment when he or she graduates to a higher level of criminal conduct.

## II.-VII.*

. . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

`The portion of the judgment which imposed sentence on counts II and III is reversed and remanded for resentencing in conformity with the views expressed in this opinion. In all other respects, including the convictions underlying each count and the corresponding findings as to the special allegations, the judgment is affirmed.

Best, Acting P. J., and Vartabedian, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 18, 1990.

---

*See footnote, *ante,* page 688.